UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

— — — — — — — — — — — — — — — — — — — — — — — — — — — — — —X

Case No.: 15-cv-3611(PAC)

WILLIAM  E. GREEN,

      Plaintiff         AMENDED
                  COMPLAINT

  -against-

JACOB & COMPANY WATCHES, INC., D/B/A
JACOB & CO, JACOB ARABO an individual, and
MG SECURITY SERVICES LLC

       Defendants

— — — — — — — — — — — — — — — — — — — — — — — — — — — — — —X

## JURY TRIAL DEMANDED

   Plaintiff, by and through his attorney's, Foley & Assoc., P.C. complains of the

defendants, Jacob & Company Watches, Inc., d/b/a Jacob & Co, and Jacob Arabo an individual,

and MG Security Services LLC whereof the following is a statement:

## PRELIMINARY STATEMENT

   1.  This action for an award of damages, declaratory and injunctive relief, attorney's fees

and other appropriate relief is brought by plaintiff, to redress intentional violations by defendants

of rights secured to her by the laws of the United States and the laws of the State of New York.

   2.  This action arises under the Civil Rights Act of 1964, 42 U.S.C. section 2000e, et seq.,

as amended (hereinafter "Title VII"), 42 U.S.C section 1981 (hereinafter, "Federal Law"),

Administrative Code of the City of New York section 8-107. 1(a) (hereinafter "ACCNY") and

New York Laws and Codes: New York Executive Law ' 296; New York City Administrative

Code ' 8-107 et seq., and all other applicable New York State and New York City Laws, Rules,

Codes, and Regulations;  The New York State Constitution, and all applicable Case Law interpreting such statutes, (hereinafter collectively referred to as "New York Law").

## JURISDICTION

3.   Jurisdiction is conferred upon this Court by 28 U.S.C. section 1331,1343 and section 1391, and 42 U.S.C. section 2000e-5(f)(3), all of which provide for original jurisdiction of plaintiff's claims arising under the laws of the United States and over actions to secure equitable and other relief.

4.   This Court has jurisdiction over plaintiff's claims under the laws of the State of New York pursuant to its supplemental jurisdiction as codified at 28 U. S. C. section 1367.

5.   Plaintiff has exhausted all administrative remedies, having filed timely complaints of discrimination on the basis of Race, Age and Color with Equal Employment Opportunity commission (hereinafter "EEOC") (EEOC charge No.520-2013-02459 and/or the New York City Commission on Human Rights as applicable as required in the individual statutes and has taken all other action necessary to bring the present matter before this Court. The EEOC Complaint is annexed and attached hereto as Exhibit A.

6.   All conditions precedent to the institution of this suit have been fulfilled.  On February 6, 2015, a Notice of Right to Sue was issued by the United States Equal Employment Opportunity Commission.  This action has been filed within ninety (90) days of receipt of said notice. The Right to Sue letter is annexed and attached hereto as Exhibit B.

## VENUE

7.   All actions complained of herein have taken place within the jurisdiction of the United States District Court for the Southern District of New York and involve a defendant that resides and/or maintains an office within its jurisdictional limits.

8.   Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. section 1391(b) and 1391(c).

## PARTIES

9. Plaintiff, William E. Green, is, and was at all times relevant hereto, an individual, and is a Black male and citizen of the United States, and a resident of the state of New York, residing at Brooklyn, New York. Plaintiff began employment with defendants, on or about December of 2011, as a security officer.

10. Defendant Jacob & Company Watches, Inc., d/b/a Jacob & Co, ("Jacob & Co'") is a domestic and/or foreign corporation duly organized and existing by virtue of the laws of the State of New York, with a principal place of business at 48 East 57th Street, New York, New York, 10022.

11. Defendant Jacob & Company Watches, Inc., d/b/a Jacob & Co, ("Jacob & Co'") is a limited liability company duly organized and existing by virtue of the laws of the State of New York, with a principal place of business at 48 East 57th Street, New York, New York, 10022.

12. Defendant Jacob & Company Watches, Inc., d/b/a Jacob & Co, ("Jacob & Co '") is an unincorporated association duly organized and existing by virtue of the laws of the State of New

York, with a principal place of business at 48 East 57th Street, New York, New York, 10022.

13. Defendant, Jacob Arabo (hereinafter "Arabo'"), is and was at all times relevant hereto, and individual and principal/owner of defendant Jacob & Co, with a principle office address located at 48 East 57th Street, New York, New York, 10022.

14.     Defendant MG Security Services LLC, ("MG Security'") is a domestic and/or foreign corporation duly organized and existing by virtue of the laws of the State of New York, with a principal place of business at 133 West 25th Street, Suite 8W, New York, NY 10001.

15.     Defendant MG Security Services LLC, ("MG Security'") is a limited liability company duly organized and existing by virtue of the laws of the State of New York, with a principal place of business at 133 West 25th Street, Suite 8W, New York, NY 10001.

16.     Defendant MG Security Services LLC, ("MG Security'") is an unincorporated association duly organized and existing by virtue of the laws of the State of New York, with a principal place of business at 133 West 25th Street, Suite 8W, New York, NY 10001.

## STATEMENT OF FACTS

17.     All of the acts or omissions alleged to have been committed by Defendants Jacob & Co and MG Security, were committed by said Defendants, its agents, principals, owners, employees, servants, workmen and /or ostensible agents, who were at all times material hereto acting within the course and scope of their employment with and on behalf of said Defendants.

18.     At all times material hereto, defendant, Arabo was acting within the course and scope of his employment/ownership and on behalf of defendant Jacob & Co.

19.     At all times material hereto, Defendant Arabo was plaintiff's supervisor and/or

manager of Defendant.

20.     At all times material hereto, Defendants Jacob & Co and MG Security, are and have been a "person'" and "employer'" as defined under Title VII and under the ACCNY and New York Law.

21.     At all times material hereto, Defendants Jacob & Co and MG Security have been a "person'" and "employer'" as defined under Title VII and under the "ACCNY'" and New York Law and are subject to the provisions of each aforesaid Act.

22.     On the job, plaintiff was the victim of racial discrimination, racial harassment, discriminatory retaliation, by his employers, supervisors and others.

23.     Plaintiff was employed by defendants from on or about December 2011 through June 19, 2013.

24.     During the course of plaintiff's employment, he has held the position of Director of Security for defendant Jacob & Co. .

25.     During the course of his employment, plaintiff maintained a satisfactory job performance rating and at all times fulfilled all of the duties and obligations commensurate with his employment.

26.     Plaintiff alleges that defendants Jacob & Co and MG Security, acting through its owners, agents, servants, workmen, employees and ostensible agents, including defendant Arabo, subjected him to regular and continuing instances of racially offensive conduct, including but not limited to, various racial and offensive comments, remarks and discrimination of various employees that were from racially diverse/protected backgrounds, all of which had the intended effect of creating a hostile work environment for plaintiff.

27.     Beginning on or about December, 2011 and continuing through the date of Plaintiff's termination, defendants Jacob & Co, MG Security and Arabo had subjected plaintiff to disparate treatment, including but not limited to, closely scrutinizing performance, wrongly citing plaintiff for unsubstantiated performance deficiencies, issuing plaintiff verbal and written warnings without cause,  making unwarranted criticisms of work performance, threatening plaintiff with termination of his employment, and subjecting plaintiff to oppressive working conditions.  Upon information and belief, defendants do not treat similarly-situated  non-minority and non- African-American employees in this manner.

28.     Plaintiff charges that defendant have discriminated against him by denying him equal terms and conditions of employment because of his race and national origin in violation of Section 8-107.1(a) of the Administrative Code of the City of New York and New York Law.

29.     Plaintiff also charges that the defendants have violated Title VII of the Civil rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., on the basis of his race and national origin.

30.     Beginning on or about December 2011 and continuing through the date of Plaintiff's termination, defendants have subjected plaintiff to discriminatory treatment, including but not limited to, creating a racially hostile work environment and causing plaintiff to experience humiliating and traumatic working conditions.  Upon information and belief, defendants had taken this and other actions against plaintiff on the recommendation and/or consent of defendant Arabo.  Upon information and belief, defendant Arabo has made said recommendations in response to and in retaliation for the plaintiff's expressing his objections to aforementioned conduct.

31.     Beginning on or about December 2011 and continuing through Plaintiff's date of

termination, defendants had subjected plaintiff to discriminatory treatment, including but not limited to, disparate treatment of Plaintiff and other African-American co-workers.  Upon information and belief, Defendants had taken these actions with the approval of defendant Arabo.  Upon information and belief, defendants had taken these actions in response to and in retaliation for plaintiff's aforesaid complaints about the racially discriminatory behavior.

32.     Plaintiff charges that respondents have discriminated against him by denying him equal terms and conditions of employment because of his race and national origin in retaliation for his opposition to discriminatory practices in violation of Sections 8-107.1(1) and 8-107.7 of the Administrative Code of the City of New York and New York Law and have damaged plaintiff thereby.

33.     Plaintiff also charges that the defendants have, violated Title VII of the Civil Rights Act of 1964, as amended, 42 violated Title VII of the civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., on the basis of plaintiff's race and national origin and in retaliation against plaintiff for plaintiff's actions in notifying defendants of alleged discriminatory practices, and making unwarranted criticisms of work performance and expressing objections against the discriminatory practices of each party.

34.     Despite Plaintiff's protestations as aforesaid, Defendants did nothing to cause the aforesaid acts of racial harassment and racial discrimination to cease and desist, and in fact, continued to subject plaintiff to the aforesaid racially-offensive comments and remarks on a more routine basis, including statements that African-Americans in suits looked like monkeys.

35.     Plaintiff complained to Defendants Jacob & Co and MG Security's management about the aforesaid acts of racial harassment and racial discrimination, and plaintiff advised

Jacob & Co and MG Security, management of his opposition thereto. However, said defendant failed to take any action to remedy the racially offensive and hostile conduct.

36.     The actions of the defendants, acting as aforesaid, created a hostile and offensive work environment, imposed intolerable working conditions on plaintiff and made it extremely traumatizing and difficult for him to continue in his employment.

37.     As a direct result of the willful, deliberate, unlawful and malicious actions of defendants, plaintiff has suffered a loss of employment, promotion, benefits, earnings and earnings potential.

38.     As a direct result of the willful, deliberate, unlawful and malicious actions of discrimination by the defendants, plaintiff has suffered harm to his reputation in the community of his peers.

39.     As a direct result of the willful, deliberate, unlawful and malicious actions of discrimination by the defendants, plaintiff has suffered emotional distress, humiliation, the loss of self-esteem and a painful diminution of his ability to provide himself and his family with the earned rewards of excellence in his chosen career.

## DETAILED ALLEGATIONS

40.     Prior to being hired by MG Security Services, LLC ("MG'") or  Jacob & Company Watches, Inc., ("Jacob & Co.'"), Plaintiff met personally with Jacob Arabo on or about December 2011. They discussed Plaintiff's background and employment history, and the duties that he would have as a security guard while working at Jacob & Co.. At the end of the meeting Jacob Arabo advised Plaintiff that he was hired to work for Jacob & Co..

41.     Plaintiff had no previous employment with MG and was not advised that he was employed by MG until he was personally advised by Mr. Arabo that he was then hired to work for Jacob & Co.

42.     To Plaintiff's knowledge, he was the only individual that was personally interviewed and hired by Mr. Jacob Arabo to work at Jacob & Co..

43.     When Plaintiff was informed of his termination by Mr. Gomez, he immediately asked him, "who did this come from'" and was advised that his termination was ordered directly by Jacob Arabo. Mr. Gomez advised him that Jacob Arabo stated that he was not to return to the store anymore.

44.     During Plaintiff's first meeting/interview with Mr. Arabo, Jacob advised him that he would be working in the Jacob & Co. store from Monday through Thursday.

45.     Shortly after he began work at Jacob & Co., Jacob Arabo advised Plaintiff that he wanted him to work on some additional/outside projects or assignments that would not be covered by MG's employment. This began approximately one month after he began working at Jacob & Co..

46.     These additional/outside projects or assignments occurred not less than 10 times in each month for almost the full duration of Plaintiff's concurrent employment with Jacob & Co.

47.     For these additional/outside projects or assignments, Plaintiff was generally advised personally by Jacob Arabo or would receive a telephone call from Jacob Arabo advising him of the additional/outside project (Jacob No.'s: 718-757-4505 Home; 917-991-3996 Cell; 516-441-7777 Cell; also via what's app text messages ). These additional/outside

projects or assignments most often involved Plaintiff working as a security guard for Jacob Arabo personally, or on occasion as a security guard to look over various company merchandise that had been loaned or consigned to a celebrity or for an event. On other occasions Plaintiff would receive a phone call from Jacob Arabo's personal driver Alfredo (Alfredo cell No. 917-972-2177). On some occasions Jacob Arabo would call Plaintiff to request that he pick up his girl-friend, sometimes to meet him at a restaurant, to escort him to various events/locations, or to guard over him and a colleague/associate, either with him being present or not being present. One of the common locations that Jacob Arabo would frequent that Plaintiff would accompany him to was the Mandarin Hotel. Annexed and attached hereto are photographs of myself and Jacob with pop singing star Nelly; with Jacob and his wife at the Lincoln Center; or guarding company merchandise all of which occurred at one of these additional/outside projects or assignments.

48.     There were also occasions when Jacob Arabo would have meetings with different clients, and/or others at hotels such as the Waldorf Astoria or the Ritz Carlton, to which Plaintiff was requested to cover.

49.     The first instance of this additional/outside project or assignment was on or about January of 2011; Jacob Arabo approached Plaintiff and asked him to ride to his home with him. After that time, it occurred quite regularly and frequently, when Plaintiff received calls at various hours on his days off, or evenings, and requesting that Plaintiff meet him at some location to accompany Jacob. They would often stop by restaurants, night clubs or events ( i.e., The Boom Boom Room, Mary J. Blige's 40th birthday party, The Metropolitan Opera, Lincoln Center, Denise Richard's charity event); Plaintiff also accompanied Jacob Arabo and Valentino D. Carlotti to attend a tribute for Mr. Carlotti.

50.     On regular occasions, almost weekly, Plaintiff accompanied Jacob Arabo to a bath house in the village where Jacob would bring his girlfriend and Plaintiff served as his body guard. Plaintiff also accompanied Jacob Arabo to a bar/nightclub called Land of Dreams Mexico, and as his personal bodyguard/security guard on December 11, 2012 to a charity auction at the location; Mark Anthony was performing.

51.     There was also one occasion when Plaintiff accompanied Jacob Arabo to the Ritz Carleton hotel, and met with some foreign dignitaries from the middle-east, where Plaintiff was photographed with other security people.

52.     On or about the Summer of 2011, Jacob Arabo personally handed Plaintiff business cards that he had ordered/prepared with Plaintiff's name on them; the business cards bore Plaintiff's name, the Jacob & Co. company address and the company logo, identifying Plaintiff as the company's Director of Security. The only business cards that Plaintiff ever handed out at the company were the cards described herein, that Jacob Arabo had made for Plaintiff, and said cards were only handed out to customers at Jacob Arabo's direction. This was only done on those occasions when Plaintiff would accompany Jacob Arabo on outside assignments. Unless Plaintiff was directed by Jacob Arabo to hand someone a card, Plaintiff did not distribute them. A copy of the business card is annexed and attached hereto as Exhibit B.

53.     For some of the additional/outside projects or assignments, Jacob Arabo would personally request that Plaintiff would depart the store to attend photo shoots on behalf of the store, and watch over the company merchandise thereat.

54.     In all instances concerning the additional/outside projects or assignments, Plaintiff would receive notice of the project/assignment from Jacob Arabo personally, or from

his driver Alfredo; there were no instances of any involvement or direction from anyone at MG

Security. In addition, Jacob Arabo personally paid Plaintiff for these additional

projects/assignments in cash; there was no instance where Plaintiff received any compensation

for these additional projects from MG directly. Again, these additional/outside projects

continued for almost the full concurrent duration of Plaintiff's employment with Jacob & Co..

55.      To Plaintiff's knowledge there were no complaints about Plaintiff addressing

store customers/patrons inappropriately; however, Plaintiff made several objections and

complaints concerning Jacob Arabo's treatment of ethnic and minority individuals that were

employed by Jacob & Co., directly or through MG Security. There were several occasions in

which Plaintiff personally witnessed unfair, disparate or discriminatory treatment/conduct by

Jacob Arabo, his sister Lydia (manager), or his wife Angela. Plaintiff noticed and commented

when there were many instances where someone of color, particularly darker skinned black

people, were advised that they did not fit the image of Jacob & Co.. These workers, specifically

including a Vincent Dillard, were not treated the same as other non-minority employees, but

were spoken to in a condescending manner, and were asked to not locate themselves in a visible

location within the store, so that customers, or patrons would see them.

56.      As Plaintiff is a person of African-American descent this troubled him, and

within a few months of witnessing such conduct/behavior, Plaintiff spoke with Manny Gomez

of MG Security. These conversations occurred both at the Jacob & Co. store location, and at the

office of MG Security. On those occasions, Mr. Gomez advised that he recognized the disparity

of treatment of some of the African-American employees, particularly when certain individuals

would be sent to the store by MG Security for employment, who was thereafter advised that

such dark-skinned employees were not welcome. Plaintiff often heard that such dark skinned

persons "did not meet the image of Jacob & Co.'"; on or about March 2012, Plaintiff heard

Jacob Arabo's sister, Lydia, and his wife Angela, both employees in the store, complain about a

dark skinned person (Vincent Dillard) being close to the entrance of the store, and advising that

"we should not have monkeys up front'". This comment was witnessed by both Greg Costo, and

Ernest Calais, employees of MG Security.

57.     Plaintiff voiced his objections, concerns, and complaints to Manny Gomez of

MG Security on several occasions, but to Plaintiff's knowledge, no action was taken and the

conduct/behavior of treating dark skinned minorities in a disparate manner only continued.

58.     Witnessing the frequency of what Plaintiff considered to be improper/unlawful

conduct and discrimination by the Jacob & Co. employees, and owners, made Plaintiff

uncomfortable; Plaintiff felt that such conduct was both discriminatory and unethical, and

neither Jacob & Co. or MG Security took any action to address my stated concerns. There came

a period of time within approximately the last month of Plaintiff's employment, when Jacob

Arabo personally requested that Plaintiff approach some of the dark skinned African-American

employees, and terminate their employment. These employees included Anthony Presley, and

were diligent and conscientious employees. The only thing that set them apart from the other

employees within the store was the color of their skin, and Plaintiff did not want to be involved

in any form of what he perceived to be discrimination against other African-American

employees.

59.     Within the last month of my employment, Jacob Arabo requested that Plaintiff

approach Anthony Presley, a dark skinned African-American co-worker, to advise him that he

was to go home and tell him that he was not to return to the store for further employment. He

also asked that Plaintiff approach another employee "Rissa" a large man of Hispanic origin, and also advise that he was to go home and not return. Plaintiff refused.

60.     Plaintiff immediately expressed his concerns and objections about such actions to Jacob Arabo; Plaintiff advised him that such conduct, to terminate such employment, was based only upon the color of their skin and was racially motivated, as Plaintiff had heard multiple comments about their not "fitting the image of the store" or referring to them as "monkeys".

61.     Plaintiff told Jacob Arabo that such actions would be improper and that Plaintiff would not be a party to such improper conduct/behavior; Plaintiff advised Jacob Arabo that the termination of these employees, along with another employee of dark skin, Mr. Vincent Dillard, was discriminatory.

62.     Instead of sending the individual Rissa home, Plaintiff requested Rissa be located him to another area out of view of Jacob Arabo and his sister.

63.     As concerns Mr. Presley, Plaintiff addressed his objections and concerns to an individual and employee of the store named Vadim; Vadim was the general manager at Jacob & Co, Lydia's son, and Jacob Arabo's nephew.  Plaintiff advised Vadim of Plaintiff's concerns about Anthony Presley's employment status, and about Plaintiff being advised that Mr. Presley did not "fit the image" of the store. Vadim advised Plaintiff to advise Mr. Presley to return to the store and continue his employment. Mr. Presley did return, however, both he and Plaintiff were terminated several days later; Plaintiff believes the only cause of his termination was in retaliation for his statements made objecting to the discriminatory actions taken against other employees by the Defendant, Jacob & Co..

64.     There were witnesses on some occasions when Plaintiff stated his objections to

Manny Gomez of MG Security, including Ernest Paisleys, Greg Costa, and Benjamin Gordon, when complaining of the discriminatory actions and environment maintained at Jacob & Co.; In addition, Plaintiff also addressed his concerns to the general manager of MG Security, Steven Gleeman.

## AND AS FOR A FIRST CAUSE OF ACTION

## Defendant Violated the Civil Rights Act of 1964,

## 42 U.S.C ''2000e, et seq. (race discrimination and retaliation)

65.     Plaintiff repeats and realleges all of the foregoing paragraphs herein above as though fully set forth herein.

66.     Defendants violated the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C.''2000e, et seq., in that it discriminated against plaintiff on account of race (Black) and national origin (African American), and retaliated against him for expressing his objections to defendants discrimination and raising the issue of discrimination, as evidenced by, inter alia, harassing and condoning the harassment of plaintiff without legitimate reason.

67.     As a result of the acts and/or omissions of the defendants, plaintiff has suffered damages in the amount of 25, 000,000 (Twenty Five Million Dollars), and plaintiff hereby demands judgment against defendants for such amount together with $10,000,000 (Ten Million Dollars) in punitive damages.

## AND AS FOR A SECOND CAUSE OF ACTION

**Defendant Violated ACCNY and New York Law**

**(race discrimination and retaliation)**

68.      Plaintiff repeats and realleges all of the foregoing paragraphs herein-above as though fully set forth herein.

69.      Defendant violated the provisions of the New York State Human Relations Act, 43 P.S. '955(a), and New York Law in that it discriminated against plaintiff on account of race (Black) and national origin (African American), and retaliated against him for expressing his objections to discrimination and raising the issue of discrimination, as evidence by, inter alia, harassing and condoning the harassment of Plaintiff without legitimate reason. As a result of the acts and/or omissions of the Defendants, Plaintiff has suffered damages in the amount of 25, 000,000 (Twenty Five Million Dollars), and plaintiff hereby demands judgment against defendants for such amount together with $10,000,000 (Ten Million Dollars) in punitive damages.

**AND AS FOR A THIRD CAUSE OF ACTION**

70.      Plaintiff repeats and realleges all of the foregoing paragraphs herein above as though fully set forth herein.

71. As described herein, Defendants have engaged in unlawful employment practices in violation of Title VII of Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. '2000(e), et seq., ACCNY and New York Law.  The said unlawful practices for which Defendants are liable

to Plaintiff include, but are not limited to, fostering and perpetuating a hostile and offensive work environment, retaliating against plaintiff because of his expressed opposition to offensive racially discriminatory related conduct in the work place, subjecting plaintiff to more onerous working conditions, treating plaintiff in a disparate manner and threatening to discharge plaintiff from his employment, all due to Plaintiff's race and national origin.

72. Defendants' violation of Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. '2000(e), et. seq., ACCNY and New York Law include subjecting plaintiff to hostile work environment that affected conditions of plaintiff's employment.

73. Defendants' violation of Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. '2000(e), et. seq., ACCNY and New York Law include subjecting plaintiff to racially discriminatory conduct which conduct was sufficiently severe and /or pervasive so as to unreasonably interfere with plaintiff's work performance and/or create a intimidating, hostile or offensive working environment.

74. Defendants' violation of Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C '2000(e), et. seq., and New York Law include subjecting plaintiff to adverse employment actions once plaintiff opposed the aforesaid unlawful employment practices.

75. As the direct result of the aforesaid unlawful discriminatory employment practices engaged in by defendant as aforesaid, in violation of Title VII of the Civil rights Act of 1964 and 1991, as amended, 42 U.S.C. '2000(e), et. seq., and New York Law, plaintiff has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, embarrassment, humiliation, inconvenience, loss of enjoyment of life, loss of future earning power, plus back pay, front pay and interest due thereon.  As a result of the acts and/or omissions of the defendants, plaintiff has suffered damages in the amount of 25, 000,000 (Twenty Five

Million Dollars), and plaintiff hereby demands judgment against defendants for such amount together with $10,000,000 (Ten Million Dollars) in punitive damages.

## AND AS FOR A FORTH CAUSE OF ACTION

76.     Plaintiff repeats and realleges all of the foregoing paragraphs herein above as though fully set forth herein.

77.     Based on the foregoing, defendants have engaged in unlawful practices in violation of the New York Law.  The said unlawful practices for which defendants are liable to plaintiff include, but are not limited to, fostering and perpetuating a hostile and offensive work environment, retaliating against plaintiff because of his expressed opposition to offensive racially related conduct in the work place, subjecting plaintiff to more onerous working conditions, treating plaintiff in a disparate manner and discharging plaintiff from his employment, all due to plaintiff's race and national origin.

78.     Defendants' violation of the New York Law include subjecting plaintiff to racial harassment, racial discrimination and retaliation and terminating or affecting the terms or conditions of plaintiff's employment.

79.     Defendant's violation of the New York Law, et. seq., include subjecting plaintiff to racially discriminatory conduct which conduct was sufficiently severe and /or pervasive so as to unreasonably interfere with plaintiff's work performance and/or intimidating, hostile and offensive working environment.

80.     Defendants' violation of the New York Law, et. seq., include subjecting plaintiff to adverse employment actions once plaintiff opposed the aforesaid unlawful employment practices.

81.     As a direct result of defendants willful and unlawful actions in treating plaintiff in a discriminatory manner and in terminating him from her position of employment solely because of her race and national original, in violation of New York Law, plaintiff has sustained severe emotional and psychological distress, loss of self-esteem, embarrassment, humiliation, inconvenience, loss of enjoyment of life, a loss of earnings, plus the value of the aforementioned benefits, plus loss of future earning power, plus back pay, front pay and interest due thereon. As a result of the acts and/or omissions of the defendants, plaintiff has suffered damages in the amount of 25, 000,000 (Twenty Five Million Dollars), and plaintiff hereby demands judgment against defendants for such amount together with $10,000,000 (Ten Million Dollars) in punitive damages.

## AND AS FOR A FIFTH CAUSE OF ACTION

### Defendant Violated 42 U.S.C '1981

82.     Plaintiff repeats and realleges all of the foregoing paragraphs herein above as though fully set forth herein.

83.     Defendant violated the provisions of 42 U.S.C. '1981 in that it interfered with plaintiff's right to make and enforce contracts, based on race, and by harassing and condoning the harassment of plaintiff without reason other than his race and expressing his objections to racial discrimination against his employer. As a result of the acts and/or omissions of the defendants, plaintiff has suffered damages in the amount of 25, 000,000 (Twenty Five Million Dollars), and plaintiff hereby demands judgment against defendants for such amount together with $10,000,000 (Ten Million Dollars) in punitive damages.

## DEMAND FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests that this Court:

(a)  Enter a declaratory judgment that defendants' acts complained of herein violated and continue to violate the rights of plaintiff as secured to him by federal and state legislative enactments and the common law of the State of New York; and

(b)  Award to plaintiff for the first cause of action a judgment against defendant damages in the amount of $25,000,000. (TWENTY FIVE MILLION DOLLARS)  together with $10,000,000 (Ten Million Dollars) in punitive damages; and

(c)  Award to plaintiff for the second cause of action a judgment against defendant damages in the amount of $25,000,000. (TWENTY FIVE MILLION DOLLARS)  together with $10,000,000 (Ten Million Dollars) in punitive damages; and

(d)  Award to plaintiff for the third cause of action a judgment against defendant damages in the amount of $25,000,000. (TWENTY FIVE MILLION DOLLARS)  together with $10,000,000 (Ten Million Dollars) in punitive damages; and

(e)  Award to plaintiff for the forth cause of action a judgment against defendant damages in the amount of $25,000,000. (TWENTY FIVE MILLION DOLLARS)  together with $10,000,000 (Ten Million Dollars) in punitive damages; and

(f)  Award to plaintiff for the fifth cause of action a judgment against defendant damages in the amount of $25,000,000. (TWENTY FIVE MILLION DOLLARS)  together with $10,000,000 (Ten Million Dollars) in punitive damages; and

(g)  Grant to plaintiff other direct, indirect and statutory damages in accordance with appropriate state and federal statutes and state law;

(h)     Grant to plaintiff pre-judgment interest in an appropriate amount;

(i)     Grant to plaintiff costs, disbursements and reasonable attorneys; fees; and

(j) Grant to plaintiff such other additional relief as this Court deems just and proper under the circumstances of this case.

Dated:   March 14, 2016
       New York, New York

_____

J.Garth Foley Esq.
Foley & Associates (JF #9950)
Attorney for Plaintiff,
William E. Green
30 Wall Street, 8th FL
New York, NY 10005
(212) 709-8025

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2016, a copy of the foregoing pleading was served by mailing a copy thereof by first class mail, postage prepaid, to:

Jason Snyder, Esq.
Paduano & Weintraub
1251 Avenue of the Americas, 9th Fl.
New York, NY 10020

– and –

Clifford J. Ingber, Esq.
Ingber Law Firm
50 Main Street, 10th Fl
White Plains, New York 10606

_____
J. Garth Foley, Esq.