```
                                            USDC SDNY
                                            DOCUMENT
                                            ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                DOC #: _____
SOUTHERN DISTRICT OF NEW YORK               DATE FILED: March 31, 2017
```

------------------------------------------------------------X
                                                            :
WILLIAM E. GREEN,                                           :
                                                            :
        *Plaintiff*,                              :    15 Civ. 3611 (PAC)
                                                            :
    -against-                                            :    **OPINION & ORDER**
                                                            :
JACOB & COMPANY WATCHES, INC.,                              :
doing business as JACOB & CO; JACOB                         :
ARABO, an individual; and MG SECURITY                       :
SERVICES LLC,                                               :
                                                            :
        *Defendants*.                             :
                                                            :
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiff William E. Green brings this action against Jacob & Company Watches, Inc. ("Jacob & Co."), Jacob Arabo (together, the "Jacob Defendants"), and MG Security Services LLC ("MG," and together with the Jacob Defendants, "Defendants") pursuant to Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and 42 U.S.C § 1981. On March 28, 2016, the Jacob Defendants and MG moved to dismiss. Dkt. 44, 48. The Jacob Defendants asserted, among other things, that Green had failed to properly effect service of process. On April 12, 2016, Green opposed Defendants' motions and cross moved for an extension of time to serve process. Dkt. 51.

      For the reasons described below, the Court grants in part and denies in part Defendants' motions to dismiss; and grants Green's motion for an extension of time to serve process.

1

# BACKGROUND[1]

Green "is a person of African-American descent." Am. Compl. ¶ 56. He was employed by Defendants, and was Director of Security for Jacob & Co. from December 2011 through June 19, 2013. *Id.* ¶¶ 20, 23–24, 40. During his employment, Green witnessed Arabo's sister and wife—both employees of Jacob & Co.—as well as Arabo engaging in "unfair, disparate or discriminatory treatment/conduct." *Id.* ¶ 55–56. Around March 2012, Green heard Arabo's sister and wife "complain about a dark skinned person (Vincent Dillard) being close to the entrance of the store, and advising that 'we should not have monkeys up front.'" *Id.* ¶ 56. Green spoke of his concerns about the conduct he witnessed at Jacob & Co. to an MG employee, Manny Gomez, but no action was taken. *Id.* ¶¶ 56–57. However, Gomez "recognized the disparity of treatment of some of the African-American employees." *Id.* ¶ 56.

Around the time of Green's last month of employment, "Arabo personally requested that [Green] approach some of the dark skinned African-American employees, and terminate their employment" even though they "were diligent and conscientious employees." *Id.* ¶ 58. Green refused Arabo's request that he tell an African-American co-worker, Anthony Presley, and a co-worker of Hispanic origin "to go home and not return." *Id.* ¶ 59. He "advised [Arabo] that such conduct, to terminate such employment, was based only upon the color of their skin and was racially motivated, as Plaintiff had heard multiple comments about their not 'fitting the image of the store' or referring to them as 'monkeys.'" *Id.* ¶ 60. Despite Green's protestations and objections, Defendants "continued to subject [Green] to . . . racially-offensive comments and remarks on a more routine basis, including statements that African-Americans in suits looked

---

[1] The Court takes Green's allegations in the Amended Complaint as true in considering Defendants' motions to dismiss. *See Rothman v. Gregor*, 220 F.3d 81, 91 (2d Cir. 2000).

like monkeys." *Id.* ¶ 34.

Green raised concerns about the "employment status" of Presley to Arabo's nephew, Vadim, the general manager at Jacob & Co. *Id.* ¶ 63. Vadim told Green to tell Presley to return and continue his employment at the store. *Id.* Several days later, however, Presley and Green were both terminated. Gomez informed Green of his termination and explained that Arabo ordered Green's termination directly. *Id.* ¶ 43. Green "believes the only cause of his termination was in retaliation for his statements made objecting to the discriminatory actions taken against other employees by the Defendant, Jacob & Co." *Id.* ¶ 63.

Throughout his employment, Defendants also "subjected plaintiff to disparate treatment." *Id.* ¶ 27. Defendants did not take a number of adverse actions against "similarly-situated non-minority and non- African-American employees." *Id.* Arabo approved the adverse actions taken against Green, which were taken "in response to and in retaliation for [Green's] . . . complaints about . . . racially discriminatory behavior." *Id.* ¶¶ 27, 31.

On July 18, 2013, Green filed a charge of discrimination against Jacob & Co. and MG with the Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit 2 to the Declaration of Scott A. Weiss (Dkt. 45-2) ("EEOC Charge"). Green indicated on the form that he was discriminated against based on race, color, and age. *Id.* He alleged that he had heard talk around the store that Arabo's sister did not want a "dark-skinned black employee, Vincent Dillard" at the front door because "he looked like a monkey." *Id.* He also stated "Lydia [sic] a Hispanic man who had been sent to the store that he 'didn't fit the profile of the store,'" and that that man was "asked to leave and not come back." *Id.* And Arabo's sister allegedly made comments that guards were too old and would ask them to leave and not return. *Id.* Green alleged that after he asked and was approved for a raise, he was subsequently told by Gomez that

3

Jacob & Co. "wanted to go in a different direction with personnel." He asserted that he was terminated despite no significant conflicts with his performance and was "replaced by a white man." *Id.*

## DISCUSSION

### I. Insufficient Service of Process

Jacob & Co. moves to dismiss for insufficient service of process. In support, it submits the Declaration of Alfredo Crossman, the individual who purportedly accepted service on behalf of Jacob & Co. Exhibit C to the Jacob Defendants' Memorandum of Law in Support of their Motion to Dismiss (Dkt. 49-3). Crossman is "employed by Jacob & Co. to drive Arabo and [is] paid by Jacob & Co." *Id.* ¶ 2. The thrust of Crossman's declaration is that he was never asked whether he was authorized to accept service on behalf of Jacob & Co., nor did he ever state that he was so authorized. *Id.* ¶¶ 2, 8. In response, Green submits an affidavit of the process server, Yoler Jean-Baptiste. Affidavit of Yoler Jean-Baptiste (Dkt. 54). Jean-Baptiste states that Crossman did in fact say that he was authorized to accept service on behalf of Jacob & Co. *Id.* ¶ 6.

The Court thinks it is unclear that service was sufficient, but determines that it is appropriate to grant Green's request for an extension of time to serve. An extension must be granted "if the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m). "The following two factors are relevant in a Court's evaluation of good cause: (1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay." *Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indus. Co.*, 13 Civ. 7639 (LTS) (FM), 2016 WL 3926449, at *4 (S.D.N.Y. July 15, 2016). Green used a process server, who appeared to have timely and properly served Jacob & Co., and Jacob & Co. appeared in this action shortly after

service, thus alleviating the concern of prejudice. The Court therefore concludes that Green has shown good cause for an extension.[2] Green has 30 days from the day of this Opinion & Order within which to serve Jacob & Co. and file proof of service with the Court.

## II. Failure to State a Claim

### A. Legal Standards

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations of a complaint as true and draws all inferences in the plaintiff's favor. *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 154 (2d Cir. 2006). The Court is not, however, required to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the factual allegations must "state a claim to relief that is plausible on its face." *Id.*

### B. Joint Employer

Where more than one potential employer exists, "liability may be found when separate legal entities have chosen to handle certain aspects of their employer-employee relationships jointly." *Forsythe v. N.Y.C. Dep't of Citywide Admin. Servs.*, 733 F.Supp.2d 392, 397 (S.D.N.Y. 2010), *aff'd*, 428 F. App'x 40 (2d Cir.2011). "In evaluating whether entities constitute joint employers, courts look at commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Balk v. N.Y. Inst. Of Tech.*, 11 Civ. 509 (SAS), 2015 WL 5518709, at *5 (E.D.N.Y. Sept. 16, 2015) (internal quotation marks omitted). Joint employment is "sufficiently broad to encompass any party who significantly affects access of any individual to employment

---

[2] Further, even in the absence of good faith, the Court would have considered it proper to exercise its discretionary authority to grant Green an extension of time to serve. *See DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010).

opportunities," *Laurin v. Pokoik*, 02 Civ.1938 (LMM), 2004 WL 513999, at *8 (S.D.N.Y. Mar. 15, 2004), and it "has been applied to temporary employment or staffing agencies and their clients; it has also been applied to contractors and subcontractors and other scenarios where two separate entities have control over an employee's employment," *Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009) (Chin, J.).

"Even where two companies are deemed a joint employer, however, it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII." *Id.* "[C]ourts have found that even when a plaintiff establishes an entity's status as a joint employer, the plaintiff must still show that the joint employer knew or should have known of the discriminatory conduct and failed to take corrective measures within its control." *Id.* (internal quotation marks and alteration omitted).

The allegations in the Amended Complaint are sufficient to plausibly allege a joint employer relationship. It appears from the Amended Complaint that MG was in the business of providing security guards to clients, such as Jacob & Co., and was Green's employer, responsible for paying Green when he worked at Jacob & Co. Green, however, asserts that Defendants were his joint employers. Green alleges that Arabo hired him personally to work for Jacob & Co., and was his supervisor. Am. Compl. ¶¶ 19, 40. Further, Arabo and MG are alleged to have had the power to discipline Green and threaten him with termination. *See id.* ¶ 27. And while Green alleges that the decision to terminate him came from Arabo, it was MG that communicated it to him. *Id.* ¶ 43.

MG disputes that it can be liable to Green, focusing on how the allegations of discriminatory conduct are directed at the Jacob Defendants' actions. The Court does not agree. Green alleges that he spoke to Gomez about the conduct of the Jacob Defendants, that Gomez

"recognized the disparity of treatment of some of the African-American employees," and that despite raising "objections, concerns, and complaints to . . . Gomez . . . , to [Green's] knowledge, no action was taken."  Am. Compl. ¶¶ 56, 57.  He also alleges that he stated his objections to "Ernest Paisleys, Greg Costa, and Benjamin Gordon" as well as "the general manager of MG Security, Steven Gleeman."  *Id.* ¶ 64.  Green has plausibly alleged that MG knew of "discriminatory conduct and failed to take corrective measures within its control." *Lima*, 634 F. Supp. 2d at 400 (alteration omitted).

### C. Exhaustion (Title VII)

To bring a Title VII claim in federal court, a plaintiff must first file charges with the EEOC.  *See* 42 U.S.C. § 2000e-5(e).  "Exhaustion of remedies is a precondition to suit, and a plaintiff typically may raise in a district court complaint only those claims that either were included in or are reasonably related to the allegations contained in [his] EEOC charge." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001) (internal quotation marks and citation omitted).  "A claim raised for the first time in the district court is 'reasonably related' to allegations in an EEOC charge where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (internal quotation marks omitted).  "If nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted." *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003) (Chin, J.).

MG argues dismissal of Green's Title VII hostile work environment, retaliation, and national origin discrimination claims is warranted because they are not reasonably related to Green's allegations in the EOOC Charge.  The Court agrees with respect to Green's hostile work

7

environment and retaliation claims, but not with respect to Green's national origin discrimination claim.

Green's hostile work environment claim is not reasonably related to his EEOC Charge. The Second Circuit has explained that for a hostile work environment claim to be reasonably related to an EEOC charge, there must be "reference to repeated conduct or the cumulative effect of individual acts." *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008). Thus, the Second Circuit held that a plaintiff failed to exhaust his remedies when his EEOC complaint "recount[ed] nothing more than a single act of physical and verbal abuse." *Id.* Green alleged in his EEOC Charge only two instances of racially discriminatory comments. In the first instance, Green did not assert that he heard the alleged discriminatory statement directly. And in the second instance, the alleged discriminatory statement was that a Hispanic man "didn't fit the profile of the store." EEOC Charge. This is not enough to establish that the factual allegations in the EEOC Charge were "sufficient to alert the EEO[C] to the possibility" that Green was subjected to a hostile work environment. *See Mathirampuzha*, 548 F.3d at 78.

Green's retaliation claim fares no better. He asserts here that he was retaliated against and terminated because he objected to discriminatory conduct directed at others. *See* Am. Compl. ¶ 63. But in his EEOC Charge, he alleges that he was terminated after requesting a raise and was replaced by a white man that he heard Arabo's sister "really liked." EEOC Charge. He also did not check the box for "retaliation" on the EEOC Charge. *Id.* Nothing in the EEOC Charge therefore would have led the EEOC to investigate the potential that Green was terminated in retaliation for objecting to discriminatory practices.

The Court does not agree, however, that Green failed to exhaust his remedies with respect to his national origin claim. Green raised race discrimination in his EEOC Charge, and courts

have "recognized that race and national origin discrimination claims may substantially overlap or even be indistinguishable depending on the specific facts of a case." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003). "Where the line between national origin discrimination and racial discrimination is difficult to trace, courts have warned that an attempt to make such a demarcation before both parties have had an opportunity to offer evidence at trial is inappropriate." *Id.* at 202 (internal quotation marks and alteration omitted).

### D.  Discrimination (Title VII, NYSHRL, and 42 U.S.C. § 1981)

A Title VII employment discrimination claim is analyzed under the multi-stage, burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the "plaintiff must initially establish a *prima facie* case of discrimination by showing that (1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances giving rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (internal quotation marks omitted).

At the pleadings stage, however, a plaintiff is "not required to plead a *prima facie* case of discrimination as contemplated by the *McDonnell Douglas* framework." *Id.* at 84. Instead, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015).

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85. The action

must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Littlejohn*, 795 F.3d at 312 n.10. "It is *a materially significant disadvantage* with respect to the terms of the plaintiff's employment." *Id.* (internal quotation marks and alteration omitted). For example, "termination of employment" or "a disproportionately heavy workload" may qualify as an adverse employment action. *Vega*, 801 F.3d at 85. However, "excessive scrutiny, criticism, and negative evaluations of an employee's work are not materially adverse employment actions unless such conduct is accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss." *Opoku v. Brega*, 15 Civ. 2213 (KMK), 2016 WL 5720807, at *7 (S.D.N.Y. Sept. 30, 2016) (internal quotation marks omitted).

To satisfy the "*minimal* burden of showing facts suggesting an inference of discriminatory motivation, *see Littlejohn*, 795 F.3d at 311, a plaintiff must "allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Vega*, 801 F.3d at 85. "Nevertheless 'a discrimination complaint . . . must . . . at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.'" *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015) (summary order) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)).

Green's NYSHRL and § 1981 discrimination claims are also both analyzed pursuant to Title VII principles. *See Littlejohn*, 795 F.3d at 32 (§ 1981); *Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 252 (E.D.N.Y. 2016) (NYSHRL).

Green alleges discrimination based on his race and national origin. He contends that Defendants subjected him to disparate treatment in the form of "closely scrutinizing performance, wrongly citing [Green] for unsubstantiated performance deficiencies, issuing

[Green] verbal and written warnings without cause, making unwarranted criticisms of work performance, threatening [Green] with termination of his employment, and subjecting [Green] to oppressive working conditions." Am. Compl. ¶ 27. Green's list of purported adverse actions lack sufficient factual support to plausibly allege more "than a mere inconvenience." *See Littlejohn*, 795 F.3d at 312 n.10. However, Green also asserts that he was terminated, Am. Compl. ¶ 43, and this is plainly sufficient to plausibly allege an adverse employment action.

"An inference of discrimination can arise from circumstances including . . . [the employer's] invidious comments about others in the employee's protected group." *Littlejohn*, 795 F.3d at 312. Green has alleged that Arabo's sister and wife (both employees of Jacob & Co.), in discussing Dillard, "advis[ed]" that they "should not have monkeys up front." Am. Compl. ¶ 56. This allegation is sufficient to satisfy Green's "minimal burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311 (emphasis omitted).

Thus, Green has adequately alleged claims against Defendants for discrimination pursuant to the NYSHRL and § 1981; and against MG and Jacob & Co. for discrimination pursuant to Title VII.[3]

### E. Retaliation (NYSHRL and 42 U.S.C. § 1981)

NYSHRL and § 1981 retaliation claims are analyzed pursuant to Title VII principles. *See Littlejohn*, 795 F.3d at 315 (§ 1981); *Doran v. N.Y. State Dep't of Health Office of the Medicaid Inspector Gen.*, 15 Civ. 7217 (PKC) (SN), 2017 WL 836027, at *13 (S.D.N.Y. Mar. 2, 2017) (NYSHRL); *Lawrence v. Sol G. Atlas Realty Co.*, 14 Civ. 3616 (DRH) (GRB), 2016 WL

---

[3] Green's Title VII discrimination claim cannot be brought against Arabo, an individual. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004).

7335612, at *4 (E.D.N.Y. Dec. 16, 2016) (NYSHRL). "Retaliation occurs when an employer takes action against an employee not because of his ethnicity, but because he engaged in protected activity—complaining about or otherwise opposing discrimination." *Vega*, 801 F.3d at 91. "To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 315–16. "[T]he allegations in the complaint need only give plausible support to the reduced prima facie requirements . . . ." *Id.* at 316.

A plaintiff has engaged in a protected activity if he "personally complains or is critical about the discriminatory employment practices of [his] employer." *Littlejohn*, 795 F.3d at 318 (internal quotation marks and alterations omitted). And "[a] retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Vega*, 801 F.3d at 90.

Green alleges that when Arabo directed him to terminate two employees, he objected that the terminations were improperly racially motivated and explained the reasons for his conclusion. *See* Am. Compl. ¶¶ 60, 61. He also alleges that Arabo directed Green's termination at least within a month of raising objections to Arabo, and within several days of raising objections to Vadim. *Id.* ¶¶ 59–60, 63. Green has therefore plausibly alleged retaliation.

### F. Hostile Work Environment (NYSHRL and 42 U.S.C. § 1981)

NYSHRL and § 1981 hostile work environment claims are analyzed pursuant to Title VII principles. *See Littlejohn*, 795 F.3d at 320–21 (§ 1981); *Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015) (NYSHRL). "To establish a hostile work environment under Title VII

. . . a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (internal quotation marks omitted). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* at 321.

"The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* "However, a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace," *Feingold v. N.Y.*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks and alteration omitted), but that single act must be "extraordinarily severe," *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). The Court "must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Littlejohn*, 795 F.3d at 321 (internal quotation marks omitted).

Green alleges that there were "multiple comments" about employees "not 'fitting the image of the store' or referring to them as 'monkeys,'" and provides the specifics for one occasion where he allegedly heard Arabo's sister and wife discussing Dillard, and saying they "should not have monkeys up front." *Id.* ¶¶ 56, 60. Because the term "monkey" is a particularly demeaning and offensive slur, and because the term was allegedly repeated multiple times, the Court concludes that Green has plausibly alleged a hostile work environment claim under the

NYSHRL and § 1981.

### G. NYCHRL

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing its provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) (internal quotation marks and alteration omitted). "[I]nterpretations of state and federal civil rights statutes can serve only as a floor below which the NYCHRL cannot fall." *Id.* (alteration omitted). "[T]he NYCHRL should be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof." *Id.* (internal quotation marks omitted).

#### 1. Discrimination

"The NYCHRL embodies a broader conception of actionable discrimination and retaliation than Title VII and the NYSHRL." *See Smith v. Johnson*, 14 Civ. 3975 (KBF), 2014 WL 5410054, at *4 (S.D.N.Y. Oct. 24, 2014). "To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive." *Gorokhovsky v. N.Y. City Hous. Auth.*, 552 F. App'x. 100, 102 (2d Cir. 2014) (summary order). "[T]he NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct." *Id.* For the same reasons that Green states a discrimination claim under Title VII, the NYSHRL, and § 1981, he also states a discrimination claim under the NYCHRL.

#### 2. Retaliation

"[T]he retaliation inquiry under the [NY]CHRL is broader than its federal counterpart." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (internal quotation marks omitted). "Under the [NY]CHRL, retaliation 'in any manner' is prohibited, and

"[t]he retaliation . . . need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment." *Id.* (quoting N.Y.C. Admin. Code § 8-107(7)). "[A] plaintiff need only show that he took an action opposing his employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Gorokhovsky*, 552 F. App'x at 102. For the same reasons that Green states a retaliation claim under § 1981 and the NYSHRL, he also states a retaliation claim under the NYCHRL.

### 3. Hostile Work Environment

Under the NYCHRL "the activity that allegedly creates a hostile work environment need not be pervasive or severe." *Olivieri v. Waldbaum, Inc.*, 12 Civ. 1195 (SLT) (MDG), 2013 WL 5507141, at *7 (E.D.N.Y. Sept. 30, 2013). "[E]ven a single comment may be actionable in appropriate circumstances." *Gorokhovsky*, 552 F. App'x at 102 (internal quotation marks omitted). Green has alleged that he heard "multiple comments" about other employees "not 'fitting the image of the store' or referring to them as 'monkeys.'" *See* Am. Compl. ¶ 60. The alleged conduct is sufficient to state a hostile work environment claim under the NYCHRL.

**CONCLUSION**

The Defendants motions to dismiss are granted in part and denied in part. Green's cross-motion for an extension of time to serve process is granted. Green has 30 days from the day of this Opinion & Order within which to serve Jacob & Co. and file proof of service with the Court. The Clerk of Court is directed to close the motions at docket numbers 44, 48, and 51.

Dated: New York, New York  
      March 31, 2017

SO ORDERED

_____  
PAUL A. CROTTY  
United States District Judge